IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Christopher Harrison,<br>    Petitioner, | )<br>)<br>) |
| v. | )     1:08cv296 (LMB/TCB) |
| | ) |
| Patricia R. Stansberry,<br>    Respondent. | )<br>)<br>) |

MEMORANDUM OPINION

Christopher Harrison, a federal inmate housed in the Eastern District of Virginia and proceeding pro se, has filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. By Order dated March 31, 2008, respondent was directed to show cause within thirty days why the petition should not be granted. On April 30, 2008, respondent filed a Motion to Dismiss the petition and memorandum of law in support of that Motion.[1] On May 13, 2008, the Clerk placed Harrison's response to the Motion to Dismiss on the docket. For the reasons that follow, respondent's Motion will be granted and the petition will be dismissed.

I.

On October 4, 2001, in the United States District Court for the Eastern District of Virginia, Harrison was convicted by a jury of one count each of conspiracy to commit armed bank robbery and to commit robbery interfering with interstate commerce, robbery affecting interstate commerce, and using a firearm in a crime of violence. United States v. Harrison, 1:07cr197 (E.D.Va. Oct. 4, 2001). Harrison was sentenced to a total of 97 months imprisonment on February 21, 2002. Harrison,

---

[1] Respondent failed to provide Harrison with the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Such notice, however, was provided to Harrison in the Court's March 31 Order.

1:01cr197; see Cox Decl. ¶ 3; Pet. at 2. Harrison did not appeal his conviction and sentence. He is serving that sentence and is currently incarcerated at the Federal Correctional Institution - Low in Petersburg, Virginia ("FCI Petersburg"). Pet. at 1. He is projected to be released from imprisonment, through a good conduct release, on October 8, 2008. Cox Decl. ¶ 3.

On November 1, 2007, respondent, the Warden of FCI Petersburg, recommended that Harrison be placed in a residential re-entry center ("RRC"), commonly known as a halfway house, beginning on April 8, 2008, six months before his release date. Pet., Ex. B. By letter dated November 29, 2007, RRC Dismas Charities, Inc. ("Dismas") in Atlanta, Georgia informed Harrison's prison unit manager that Harrison had been accepted for placement there. Pet., Ex. C. Harrison's placement at Dismas is set to commence on July 10, 2008, 92 days before his release date, rather than on April 8, 2008, as recommended by respondent. Compare Pet., Ex. C with Pet., Ex. B; Cox Decl. ¶ 5.

Harrison filed the instant § 2241 petition for a writ of habeas corpus on March 12, 2008. He contends that Dismas' decision to accept him for only 92 days of placement there unlawfully prevents him from spending the last six months of federal sentence in the RRC. He contends further in the petition that it would have been futile for him to raise an administrative grievance to Dismas, as that entity, in Harrison's words, "unilaterally decided" to accept him for placement for only 92 days and that, because he is within six months of his release date, the "exigencies" of this case justify an exception to the exhaustion requirement. In her memorandum accompanying the Motion to Dismiss the petition, respondent contends that Harrison is not entitled to habeas relief because 1) he has failed to exhaust his administrative remedies and 2) the Bureau of Prisons ("BOP") has fulfilled

2

its duties under 18 U.S.C. § 3621 [2] and 18 U.S.C. § 3624, [3] the applicable federal statutes governing designation and pre-release custody of federal inmates. In his response, Harrison counters that he has not been dilatory in seeking relief and that the "time constraints" of this case merit an exception to the exhaustion requirement. He argues further that the BOP failed in its "duty to ensure" that Dismas complied with the relevant provisions of 18 U.S.C. § 3624 and that Dismas' decision to admit him for a period of 92 days was made without procedural due process. This matter is ripe for disposition.

## II.

A federal prisoner challenging the execution of his sentence must exhaust administrative remedies prior to seeking habeas relief under 28 U.S.C. § 2241. See Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); McClung v. Shearin, No. 03-6952, 2004 WL 225093, at * 1 (4th Cir. Feb. 6, 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001); Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir. 1981)). However, unlike the statutory exhaustion

---

[2] Under 18 U.S.C. § 3621, the BOP has the authority to designate where a federal inmate will be imprisoned. In making this determination, the BOP is to consider: 1) the resources of the facility contemplated, the "nature and circumstances" of the offense, 3) the "history and characteristics" of the prisoner; 4) any statement by the sentencing court concerning the purposes for which the sentence to imprisonment was determined to be warranted or recommending a type of institution as appropriate, and 5) any pertinent policy statement issued by the United States Sentencing Commission, pursuant to [28 U.S.C. §] 994(a)(2).... 18 U.S.C. § 3621(b).

[3] At the time the BOP recommended Harrison for placement in an RRC, 18 U.S.C. § 3624(c) provided that the BOP was required "to the extent practicable, [to] assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 percentum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community." This subsection has since been amended to require the BOP "to the extent practicable, [to] ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust and to prepare for reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1) (effective Apr. 9, 2008).

requirements applicable to complaints subject to the Prison Litigation Reform Act of 1996, see 42 U.S.C. § 1997e(a), and petitions for writs of habeas corpus under 28 U.S.C. § 2254, the exhaustion prerequisite for filing § 2241 petitions is judicially imposed. The majority of the Circuit Courts of Appeal have held, in published and unpublished opinions, that exhaustion under § 2241 is not required when pursuit of administrative remedies would be futile. See Winck v. England, 327 F.3d 1296, 1304 (11th Cir. 2003); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994); Beharry v. Ashcroft, 329 F.3d 51, 62 (2d Cir. 2003); Campbell v. Barron, 87 Fed.Appx. 577 (6th Cir. 2004) (unpublished); Holman v. Booker, 166 F.3d 347 (10th Cir. 1998) (Table). Although the United States Court of Appeals for the Fourth Circuit has yet to hold in a published opinion that a futility exception applies to § 2241 petitions, in the recent unpublished decision of McClung v. Shearin, that Court held that a petitioner's failure to exhaust may be excused by a showing of cause and prejudice. 2004 WL 225093, at * 1.

Under the BOP's Administrative Remedy Program, a program through which a federal inmate may "seek formal review of an issue relating to any aspect of his ... own confinement," 28 C.F.R. § 542.10(a) (emphasis added), a prisoner is required first to attempt to resolve his grievance informally and, if unsuccessful in that attempt, file appeals to the Warden, the appropriate BOP regional director, and to the Office of General Counsel. 28 C.F.R. §§ 542.13-15. The administrative process is exhausted when the General Counsel issues a ruling on the inmate's final appeal. Id. § 542.15(a). The entire process may take up to 120 days to complete.[4] In this case, the record makes

---

[4] Depending on what level the inmate initiates it, the BOP's Administrative Remedy consists of a three- or four- step procedure. Subject to the exceptions delineated in 28 C.F.R. § 542.13(b), which are inapplicable to the instant case, an inmate must first attempt to remedy his complaint by presenting the issue informally to staff by presenting an "Inmate Request to Staff Member" form. Id. § 542.13(a). Within 20 days after the occurrence of the circumstances which are the subject of

clear that Harrison has not exhausted the claims raised in the instant petition by presenting and appealing them in accordance with the provisions of the BOP's Administrative Remedy Program. See Pet.; Cox Decl. ¶ 4. Accordingly, those claims are defaulted unless Harrison can show cause and prejudice sufficient to excuse his default. McClung, 2004 WL 225093, at * 1.

Harrison presents two arguments in an effort to justify his failure to exhaust the instant claims through the BOP's Administrative Remedy Program. First, Harrison contends that resorting to the administrative remedy procedure in this case would be an exercise in futility because he would be required to raise his complaints about the timing of his placement with Dismas, the very entity that "unilaterally denied" him for placement there for the entirety of the six months remaining in his sentence. Pet. at 4. Second, Harrison argues that the "time constraints" in this case weigh in favor of excusing the exhaustion requirement. Pet at 4; Resp. at 1. Specifically, Harrison claims that he did not receive Dismas' written decision accepting him for only 92 days "until the second week in March 2008," approximately a month prior to the date on which his sentence would enter its final six months. Requiring him to exhaust the instant claims through the administrative process would, in his words, render "moot" the instant claims for relief.

Harrison, however, was not required to the present the instant claims to Dismas or any of its

---

the inmate's complaints, the inmate must complete the first step by submitting a formal, written "Administrative Remedy Request" on Form BP-9 to an institution staff member designated to receive such requests. Id. § 542.14(a), (b), (c)(4), or under exceptional circumstances, to the BOP Regional Director. Id. § 542.14(d). The Warden and Regional Director must respond to the inmate's request within 20 and 30 days, respectively. Id. § 542.18. An inmate unsatisfied with the Warden's response may appeal within 20 days to the Regional Director on Form BP-10. Id. § 542. 15(a) and (b). If the inmate's request went initially to the Regional Director, then the inmate may appeal an unfavorable response to General Counsel on a BP-11 Form within 30 days after the Regional Director has signed the response. Id. § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id. § 542.18.

agents. Because the instant claims concern the length of time Harrison would be required to spend in a federal correctional institution and the conditions and location of his confinement during the last six months of his sentence, they are issues that are properly presentable to the BOP through the Administrative Remedy Program, a program which is available to allow a federal inmate such as Harrison to seek "formal review of an issue relating to any aspect of his ... confinement." 28 C.F.R. § 542.10(a) (emphasis added).[5] As such, his contention that exhaustion is futile because he would be required to present his claims to the very entity that accepted him for only 92 days of placement does not excuse his failure to exhaust in this case. Cf., e.g., Colton v. Ashcroft, 299 F.Supp.2d 681, 690 (E.D. Ky. 2004) (recognizing a futility exception to the exhaustion requirement where a prisoner would be required to submit his claim to the Attorney General's Office, an office which had previously indicated its strong position on the issue, as well as an "unwillingness" to reconsider).

Harrison's arguments concerning the time frames in the instant case as cause to excuse his failure to exhaust are equally unavailing. Assuming, without deciding, that Harrison did not learn of the decision concerning his placement until some time during the "second week in March 2008,"[6]

---

[5] Moreover, Harrison does not suggest that the Administrative Remedy Program was somehow unavailable to him to raise the instant claims, and nothing in the record suggests that this is the case.

[6] It is unclear from the record exactly when Harrison first learned of his placement at Dismas. The letter from Dismas notifying Harrison's unit manager of the placement acceptance and commencement date is dated November 29, 2007. Pet., Ex. B. Although the letter references Harrison, it is addressed only to the prison unit manager and copies were directed to a "Ronald James, CCM," "Tom Bishop, CUSPO," and "File." Id. In his response to the Motion to Dismiss the petition, Harrison states that he did not receive "the written decision inwhich [sic] to challenge the Three (3) months halfway house time allocuated [sic] by Ditmas [sic] Chariteis" until some time in the "second week" in March, 2008. The Court assumes that Harrison is referring to Dismas' November 29 letter. The response and petition shed no light, however, as to the date on or time frame within which Harrison first learned of the details concerning his placement and commencement date; they provide only the date on which Harrison received the November 29 letter.

approximately a month before his sentence entered its last six months, such proximity to the "six-month" date, or even the "six-month" date itself does not necessarily present the benchmark for determining futility of exhaustion. That the BOP may recommend and refer a prisoner such as Harrison to an RRC does not mean that it must. See Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 251 (3d Cir. 2005); Crahan v. Adams, No. CIVA 1:04cv426, 2004 WL 4020190, at * 17 (S.D.W.Va. June 28, 2004) (noting that a federal prisoner has no right under § 3621(b) to placement in a halfway house for the last six months of his sentence). Moreover, the BOP is vested with considerable discretion under 18 U.S.C. § 3621(b) in determining the place of imprisonment and 18 U.S.C. § 3624(c) likewise gives the BOP discretion in choosing the appropriate pre-release transition placement. If an inmate is dissatisfied with a pre-release placement decision, it makes sense that he be required to attempt to persuade the BOP to exercise its discretion differently through the administrative review process before bringing a claim under § 2241 in federal court. See, e.g., Narang v. Samuels, No. 06-1062, 2006 WL 2627965, at * 4 (D.N.J. Sept. 12, 2006).

To allow Harrison to bypass the BOP's administrative remedy process would result in the Court not having the benefit of a factual record developed by the BOP, the very entity with expertise in recommending pre-release placement of federal inmates. Finally, allowing Harrison to bypass the BOP administrative remedy process presents the danger of elevating to an emergent federal case a pre-release transfer plan that could have been addressed at the administrative level, if meritorious. Therefore, because Harrison has failed to present cause and prejudice sufficient to excuse his failure

---

Assuming Harrison had learned of the decision concerning the length of his placement at Dismas at the end of November or even in December of 2007, it appears likely that Harrison's claims could have been addressed in the nearly three and half months that remained before Harrison's sentence entered its last six months.

to exhaust his administrative remedies, the instant habeas petition must be dismissed.[7] See McClung, 2004 WL 225093, at * 1.

### III.

For the foregoing reasons, respondent's Motion to Dismiss the petition will be granted, and the instant petition for a writ of habeas corpus will be dismissed without prejudice. An appropriate Order shall issue.

Entered this 5th day of June 2008.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[7] This dismissal renders moot the remainder of Harrison's challenges.